UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Everett Eadie ) | CASE No.: 2:18-cv-02998-DCN |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| Eadie's Construction, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## COMPLAINT

As and for his Complaint, Plaintiff Everett Eadie alleges the following against Defendant Eadie's Construction, Inc.:

### STATEMENT OF CLAIM

1. Eadie's Construction, Inc. ("Defendant") is in the construction business of industrial, municipal and residential drain and vacuum work; utility construction and repair; asphalt and concrete services; and other industrial and residential construction matters. Plaintiff Everett Eadie brings this action to recover damages arising out of Defendant's improper deductions from his paychecks; failure to compensate him for time worked in excess of 40 hours; and failure to provide him notice of COBRA continuation coverage.

### PARTIES

2. Plaintiff Everett Eadie (herein, "Everett") is domiciled in the State of South

Carolina, as he permanently resides at 121 Copperhead Road, Ridgeville, South Carolina 29472.

3.   Defendant is a corporation incorporated under the laws of South Carolina, with its principal place of business in Ridgeville, South Carolina.

## JURISDICTION AND VENUE

4.   This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Everett has alleged a cause of action under the Fair Labor Standards Act (herein, "FLSA"), 29 U.S.C. § 201 et seq., the Employee Retirement Income Security Act of 1974,  29 U.S.C. § 1132(c) (herein, "ERISA"), and 29 U.S. Code § 1161 et seq., the Consolidated Omnibus Budget Reconciliation Act of 1985 (herein, "COBRA").

5.   This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

6.   Venue is proper under § 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in the District of South Carolina, Charleston Division.

## FACTS

7.   Keith Eadie, Owner and Operator of Defendant, is Everett's older brother.

8.   Defendant employed Everett from January 2014 to May 2018 as a Utility Installation Supervisor/ Main Excavation Operator.

9.   As a Utility Installation Supervisor/ Main Excavation Operator., Everett's job consisted of the following primary duties:

      a.   Operating excavating machines;

b.  Laying storm drains;

c.  Repairing drain and water mains;

d.  Digging ditches; and

e.  Installing pipes.

10. When he was hired in 2014, Defendant and Everett agreed to a pay rate of $22.00 per hour.

11. At that time, it was communicated to Everett that his compensation package included a cellular phone, as well as employer-paid premiums for life and health insurance through Defendant's group insurance plan to cover himself, his wife Lori, and his two minor children, Weston and Kayton.

12. Defendant did not provide Everett or his family beneficiaries a plan summary Description (herein, "SPD") at this time.

**Improper Insurance Deductions and Changes in Insurance Policies without Notice**

13. Around January 1, 2015, <u>without prior written notice to Everett</u>, Defendant began deducting life and health insurance premiums from Everett's paychecks at a rate of <u>$291.92 per pay period</u>.

14. Upon information and belief, Defendant did not provide Everett with a SPD related to the group insurance plan.

15. Around September 2015, Defendant inexplicably <u>stopped</u> deducting life and Health insurance premiums from Everett's checks.

16. Around February or March 2016, Defendant <u>reduced Everett's pay rate to</u>

$15.50 per hour without prior written notice of the reduction to Everett.

17. Around January 1, 2017, Defendant again began deducting life and health insurance premiums of $349.83 per pay period without prior written notice to Everett of the deduction.

18. Defendant did not advise Everett or his family plan beneficiaries of any change in insurance coverage to account for the change in the amount of the deduction.

19. Further, Defendant did not provide Everett or his family beneficiaries an SPD reflecting changes in the group insurance plan.

20. In addition to the life and health insurance premiums being deducted, around February 13, 2017, Defendant began separately deducting $50.62 per pay period from Everett's check, and designated such deductions simply as "Health Employee," without prior written notice to Everett of the deduction.

21. Defendant did not advise Everett or his family plan beneficiaries of any change in insurance coverage to account for the change in the amount of the deduction.

22. Further, Defendant did not provide Everett or his family beneficiaries an SPD reflecting the changes in the group insurance plan.

23. Around February 20, 2017, the amount of life and health insurance premiums Defendant deducted from Everett's check increased to $411.27 per pay period, without prior written notice to Everett of the deduction.

24. Defendant did not advise Everett or his family plan beneficiaries of any change in insurance coverage to account for the change in the amount of the deduction,

25. Further, Defendant did not provide Everett or his family beneficiaries an SPD

reflecting changes in the group insurance plan.

26. On February 27, 2017, Defendant apparently changed the "Health Employee" designation on Everett's paycheck for the $50.62 per pay period deduction to "Dental Vision Life Ins Employee."

27. Around March or April 2018, Defendant's deductions for "Health Life Company" shrank from $411.27 to $315.61, without written notice to Everett or his family beneficiaries as to any change in coverage and without providing an SPD to them reflecting the change in coverage.

28. However, during the same timeframe, the "Dental Vision Life Ins Employee" category on Everett's paychecks increased from $50.62 to $56.07 per pay period, without written notice to Everett or his family beneficiaries as to any change in coverage and without providing an SPD reflecting the change in coverage.

29. Further, during that same timeframe, Defendant again began deducting sums under the designation "Health Employee" in the amount of $210.41 per pay period, in addition to the deductions made under the "Health Life Company" and "Dental Vision Life Ins Employee" designations, without written notice to Everett or his family beneficiaries as to any change in coverage and without providing an SPD reflecting the change in coverage.

30. During this timeframe, the group plan changed to a new plan in which the deductible was significantly increased. For example, Everett's out of pocket expenses for his Suboxone increased from $30 to $687.

**Improper "Bill Pay" Deductions**

31. On multiple occasions as reflected on many of Everett's pay stubs from at least 2015 to the present, Defendant deducted significant dollar amounts from his pay checks <u>without providing him notice him in writing of the deductions before they were taken out of his check.</u>

32. For example, Defendant deducted the following non-exclusive amounts, designated as "Bill Pay" on the face of his paychecks, <u>without noticing Everett in writing of the deductions before they were taken out of his check:</u>

    a. For the May 15, 2017 to May 21, 2017 pay period, Defendant's handwritten notation on Everett's paycheck indicates the "Bill Pay" related to "CVS Rx $31.37" and "Phone Bill $55.12";

    b. For the June 26, 2017 to July 2, 2017 pay period, Defendant's handwritten notation on Everett's paycheck indicates the "Bill Pay" related to "Phone Bill $164.90";

    c. For the November 13, 2017 to November 19, 2017 pay period, Defendant's handwritten notation on Everett's paycheck indicates the "Bill Pay" related to "Phone Bill $150.21";

    d. For the November 27, 2017 to December 3, 2017 pay period, Defendant's handwritten notation on Everett's paycheck indicates the "Bill Pay" deduction of $193.86 was "Towards Phone (per payment)".

33. Everett complained to the Payroll department and his supervisors on multiple occasions about the improper deductions, but the deductions continued.

**Uncompensated Overtime and Calculations of Improper Withholdings**

34. Everett often worked in excess of 40 hours per week; however, on multiple occasions, as reflected on the face of many of Everett's pay stubs from at least 2015 to the present, Defendant did not compensate him at the requisite "time and a half" rate for the hours worked in excess of 40 hours per week.

35. Everett complained to the Payroll department and his supervisors on multiple occasions about the unpaid overtime, but Defendant continued to fail to compensate him appropriately.

36. The following table (herein, "Table 1) represents Everett's improper withholdings (insurance, phone bill, "Bill Pay") and unpaid overtime hours from the limited pay checks he has in his possession (copies of which are attached hereto as Exhibit A):

| PAY PERIOD | IMPROPER WITHHOLDINGS | UNCOMPENSATED OVERTIME HOURS WORKED | PAY PERIOD | IMPROPER WITHHOLDINGS | UNCOMPENSATED OVERTIME HOURS WORKED |
|---|---|---|---|---|---|
| 1/15/2015-1/21/2015 | "Non-Taxable Company Items: Health & Life Company" **$263.70** | | 4/3/17-4/9/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$130.93** | |
| 1/29/2015-2/4/2015 | "Non-Taxable Company Items: Health & Life Company" **$291.92** | | 4/10/17-4/16/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$100** | 1 hour<br><br>Straight time rate: $30 per hour<br><br>Overtime rate: $45<br><br>$45 x 1 hour = **$45 owed** |
| 2/5/2015-2/11/2015 | "Non-Taxable Company Items: Health & Life Company" **$291.92** | | 5/1/17- 5/7/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27** | |

| | | | | 2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$100** | |
|---|---|---|---|---|---|
| 3/19/2015-3/25/2015 | "Non-Taxable Company Items: Health & Life Company" **$291.92** | | 5/8/17-5/14/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$100** | |
| 3/26/2015-4/1/2015 | "Non-Taxable Company Items: Health & Life Company" **$291.92** | | 5/15/17-5/21/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$184.49** (hand-written notation: "CVS Rx $31.37" and "Phone bill $53.12") | |
| 4/2/2015-4/8/2015 | "Non-Taxable Company Items: Health & Life Company" **$291.92** | .5 Hour<br><br>Straight time rate: $25 per hour<br><br>Overtime rate: $37.50<br><br>$37.50 x .5 Hour =<br><br>**$18.75 owed** | 5/29/17-6/4/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$100** | 3.75 hours<br><br>Straight time rate: $32.50 per hour<br><br>Overtime rate: $48.75<br><br>$48.75 x 3.75 hours =<br><br>**$182.81 owed** |

| | | | | | |
|---|---|---|---|---|---|
| 4/9/2015-4/15/2015 | "Non-Taxable Company Items: Health & Life Company" **$291.92** | | 6/5/17-6/11/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$75** (hand-written notation: "CVS Rx $31.37" and "Phone bill $53.12") | 1 hour<br><br>Straight time rate: $32.50 per hour<br><br>Overtime rate: $48.75<br><br>$48.75 x 1 hour = **$48.75 owed** |
| 3/28/16-4/3/2016 | Reduced pay rate from $25 per hour to **$15.50 per hour**<br><br>Compensated at an overtime rate of $23.25 per hour; should have been compensated at **$37.50 per hour** | 4 Hours<br><br>**Proper straight time rate:** $25 per hour<br><br>Proper overtime rate: $37.50<br><br>$37.50 x 4 = **$150 owed** | 6/12/17-6/18/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$120** | |
| 4/4/16-4/10/16 | Reduced pay rate from $25 per hour to **$15.50 per hour**<br><br>Compensated at an overtime rate of $23.25 per hour; should have been compensated at **$37.50 per hour** | 6.25 hours<br><br>**Proper straight time rate:** $25 per hour<br><br>Proper overtime rate: $37.50<br><br>$37.50 x 6.25 = **$234.38 owed** | 6/19/17-6/25/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$200** | |
| 4/18/16-4/24/16 | "Non-Taxable Company Items: Health & Life Company" **$349.83** | | 6/26/17-7/2/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$164.90** (hand-written notation: " "Phone bill $164.90") | |
| 4/25/16-5/1/16 | "Non-Taxable Company Items: Health & Life Company" **$349.83** | | 7/3/17-7/9/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$100.00** | 13 hours<br><br>Straight time rate: $32.50 per hour<br><br>Overtime rate: $48.75<br><br>$48.75 x 13 hours =<br><br>**$633.75 owed** |
| 5/16/16-5/22/16 | "Non-Taxable Company Items: Health & Life Company" **$349.83** | | 7/17/17-7/23/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$195.30** | |
| 7/11/16-7/17/16 | "Non-Taxable Company Items: Health & Life Company" **$349.83** | | 7/31/17-8/6/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$235.00** | |
| 10/3/16-10/9/16 | "Non-Taxable Company Items: | | 8/7/17-8/13/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27** | |

| | | | | | |
|---|---|---|---|---|---|
| | Health & Life Company" **$349.83** | | | 2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$100.00** | |
| 10/17/16-10/23/16 | "Non-Taxable Company Items: Health & Life Company" **$349.83** | | 8/21/17-8/27/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$89.35** | |
| 11/7/16-11/13/16 | "Non-Taxable Company Items: Health & Life Company" **$349.83** | | 8/28/17-9/3/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | |
| 11/21/16-11/27/16 | "Non-Taxable Company Items: Health & Life Company" **$349.83** | 4.5 hours<br><br>Straight time rate: $30 per hour<br><br>Overtime rate: $45<br><br>$45 x 4.5 hours = **$202.50 owed** | 9/18/17-9/24/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | |
| 1/2/17-1/8/17 | "Non-Taxable Company Items: Health & Life Company" **$349.83** | 7.75 hours<br><br>Straight time rate: $30 per hour<br><br>Overtime rate: $45 | 10/16/17-10/22/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental | |

| | | $45 x 7.75 hours = **$348.75 owed** | | Vision Life Ins Employee" **$50.62** | |
|---|---|---|---|---|---|
| 1/16/17-1/22/17 | 1. "Non-Taxable Company Items: Health & Life Company" **$349.83**<br><br>2. "Adjustments to Net Pay: Bill Pay" **$200.00** | | 10/23/17-10/29/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | |
| 1/23/17-1/29/17 | 1. "Non-Taxable Company Items: Health & Life Company" **$349.83**<br><br>2. "Adjustments to Net Pay: Bill Pay" **$200.00** | | 10/30/17-11/5/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$164.08** | |
| 1/30/17-2/5/17 | 1. "Non-Taxable Company Items: Health & Life Company" **$349.83**<br><br>2. "Adjustments to Net Pay: Bill Pay" **$297.21** | | 11/12/17-11/19/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$150.21** (hand-written notation: "towards phone (per payment)" | |
| 2/6/17-2/12/17 | "Non-Taxable Company Items: Health & Life Company" **$349.83** | | 11/27/17-12/3/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | |

| | | | | 3. "Adjustments to Net Pay: Bill Pay" **$193.86** (hand-written notation: "phone bill" | |
|---|---|---|---|---|---|
| 2/20/17-2/26/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Health Employee" **$50.62** | | 12/18/17-12/24/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | |
| 2/27/17-3/5/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | | 1/1/18-1/7/18 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | |
| 3/6/17-3/12/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | | 1/22/17-1/28/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | |
| 3/13/17-3/19/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62** | | 1/29/18-2/4/18 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | **$100** (hand-written notation: "see attached per Dawn" | |
| 3/20/17-3/26/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$100** | | 2/5/18-2/11/18 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$100** | |
| 3/27/17-4/2/17 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$411.27**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$50.62**<br><br>3. "Adjustments to Net Pay: Bill Pay" **$529.70** | | 4/16/18-4/22/18 | 1. "**Non-Taxable** Company Items: Health & Life Company" **$315.61**<br><br>2. "Adjustments to **Net** Pay: Dental Vision Life Ins Employee" **$56.07**<br><br>3. "Adjustments to **Net** Pay: Health Employee" **$210.41**<br><br>4. "Adjustments to Net Pay: Bill Pay" **$100** | |
| TOTAL IMPROPERLY WITHELD (exclusive of overtime):<br><br>$27,367.71 | Calculated by:<br><br>$26,607.71 (Total for improper insurance premiums and "bill pay" deductions) | Plus:<br><br>$760 (difference of $9.50 per hour between proper $25 per hour and improper $15.50 per hour for 3/28/16 and 4/4/16 pay periods, total of 80 straight time hours) (Calculated by $9.50 x 80 hours.) | TOTAL UNCOMPENSATED OVERTIME HOURS:<br><br>41.75 = $684.50 | See calculation of uncompensated overtime owed at **Table 2, Paragraph 62** of this Complaint | **TOTAL OWED:**<br><br>$27,367.71+<br><br>$684.50=<br><br>**$28,052.21** |

37. Upon information and belief, Defendant also deducted <u>additional amounts</u> from Everett's pay checks not represented in the pay stubs he has in his possession, without previously noticing him of the deduction.

38. For example, the following non-exclusive list of items were deducted from his paychecks without any prior written notice to him:

     a. $1,500 for steel plates and plugs that were used by Defendant in the course and scope of its business;

     b. $1,550 for damage Everett accidentally caused to an unmarked South Carolina Electric and Gas Company buried powerline (over which Defendant had insurance coverage);

     c. $500 for damage to a fuse machine that Everett accidentally damaged within the course and scope of Everett's employment; and

     d. $240 from his "paycheck dated 7/1/2016" purportedly for "the amount of rework that had to been [sic] done on Hickory Hill Landfill job", for a total of at least **$3,740.00** additional dollars improperly withheld from Everett's pay checks; (July 1, 2016 notice attached hereto as Exhibit B.)

39. Thus:

| **TOTAL IMPROPERLY WITHELD:** <br><br> **$31,792.21** | Calculated by: <br><br> **$28,052.21** ("Total Owed" from Table 1) | Plus: <br><br> **$3,740.00** <br> (Total from Paragraph 38(d)) |
|---|---|---|

40. Years of improper deductions from his pay checks and failure to compensate him for overtime, even after bringing same to Defendant's attention, resulted in Everett's constructive discharge on May 8, 2018.

**COBRA Notice Requirements**

     **Defendant Failed to Notice Everett or His Beneficiaries of Their Rights Under ERISA/ COBRA**

41. Everett experienced a qualifying event (constructive discharge) on May 8, 2018. Importantly, for purposes of COBRA, Everett was not terminated for gross misconduct.

42. Following the qualifying event, Defendant failed to provide Everett or his beneficiaries notice of all required coverage information and hindered their ability to obtain continuation coverage; in fact Defendant provided <u>no notice whatsoever at any time.</u>

43. Everett and his beneficiaries were unable to obtain continuation coverage after receiving no notice of their rights for same.

44. Everett requested the summary plan description in writing from Defendant on August 9, 2018.

45. Defendant did not send Everett COBRA benefits information within 14 days of his separation; in fact to date, Defendant has never sent him COBRA information.

46. Everett's and his beneficiaries' continued health insurance coverage under ERISA would have been responsible for paying the insurer's assigned portion of their medical expenses under the original healthcare coverage agreement(s).

47. From June 23-July 10, 2018, Everett was seen at the Medical University of South Carolina (herein, "MUSC") and incurred $23,996 in expenses as an uninsured patient from as a result of Defendant's failure to notice Everett of his rights to continuation of coverage under COBRA.

48. The COBRA amendments to ERISA include certain provisions relating to

continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

49. Among other things, COBRA requires the plan administrator of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event… to elect, within the election period, continuation coverage under the plan as a result of a qualifying event… to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161.

50. COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1161(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

51. The relevant regulations prescribed by the Secretary of Labor concerning notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 and the Appendix thereto.

52. Section 2590.606(b)(1) states:

Except as provided in paragraph (b)(2) or (3) of this section, upon receipt of a notice of qualifying event…, the administrator shall furnish to each qualified beneficiary, not later than 14 days after receipt of the notice of qualifying event, a notice meeting the requirements of paragraph (b)(4) of this section.

53. Section 2590.606(b)(4), in turn, provides as follows:

(4) The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:

(i) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party under the plan for the administration of continuation coverage benefits.

(ii) Identification of the qualifying event:

(iii) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(iv) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the date before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v) An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrolment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights;

(vii) A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such

coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii) An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act ( 42 U.S.C. 401et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the length of any such extension;

(x) In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii) A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete

information regarding such rights is available in the plan's summary plan description or from the plan administrator.

54. To facilitate compliance with these notice requirements, the United States Department of Labor (herein, "DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. (A copy of this Model Notice is attached hereto as Exhibit C.)

55. The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

56. In the event that the plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorney's fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

## CAUSE OF ACTION ONE:
## STATUTORY FLSA VIOLATIONS AND RETALIATION

57. Everett re-states and re-alleges the allegations in Paragraphs 1 through 56 of his Complaint as if set forth fully herein.

58. Upon information and belief, Defendant's annual dollar volume of business exceeds $500,000.

59. At no time was Everett a salaried exempt employee.

60. Everett's job as Excavation Supervisor was "blue-collar" because his duties were comprised entirely of manual labor.

61. Defendant knew the FLSA required it to compensate Everett for hours worked in excess of 40 at a rate of time-and-a-half because it did so on numerous occasions.

62. As the face of the limited pay stubs Everett retained demonstrate, Defendant failed to pay Everett for <u>at least</u> 41.75 hours of overtime at the time-and-a-half rate, as the following table illustrates (herein, "Table 2):

| PAY PERIOD | OVERTIME HOURS WORKED | STRAIGHT TIME RATE | OVERTIME RATE | INCORRECTLY PAID | SHOULD HAVE BEEN PAID | DIFFERENCE |
|---|---|---|---|---|---|---|
| 4/2/15-4/8/15 | .5 | $25.00 | $37.50 | $0 | $18.75 | **$18.75** |
| 3/28/16-4/3/16 | 4 | $25.00 **(Improperly reduced to $15.50)** | $37.50 | **Incorrectly paid at a rate of $23.25** x 4 = $93 | $37.50 x 4 = $150 | **$57.00** |
| 4/4/16-4/10/16 | 6.25 | $25.00 **(Improperly reduced to $15.50)** | $37.50 | **Incorrectly paid at a rate of $23.25** x 6.25 = $145.31 | $37.50 x 6.25 = $234.38 | **$89.07** |
| 11/21/16-11/27/16 | 4.5 | $30.00 | $45.00 | $135.00 | $202.50 | **$67.50** |
| 1/2/17-1/8/17 | 7.75 | $30.00 | $45.00 | $232.50 | $348.75 | **$116.25** |
| 4/10/17-4/16/17 | 1.0 | $30.00 | $45.00 | $30.00 | $45.00 | **$15.00** |
| 5/29/17-6/4-/7 | 3.75 | $32.50 | $48.75 | $121.88 | $182.81 | **$60.93** |
| 6/5/17-6/11/17 | 1.0 | $32.50 | $48.75 | $32.50 | $48.75 | **$48.75** |
| 7/3/17-7/9/17 | 13.00 | $32.50 | $48.75 | $422.50 | $633.75 | **$211.25** |

| TOTAL | 41.75 hours | | | | | <u>$684.50 OWED</u> |
|---|---|---|---|---|---|---|

63. Defendant neither acted in good faith nor did it have reasonable grounds for believing that its act or omission was not an FLSA violation.

64. Rather, Defendant's conduct was willful because it knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.

65. Defendant's willfulness is evidenced by the facts it:

    a. Paid Everett overtime on occasion, demonstrating it <u>knew</u> the nonpayment of overtime was prohibited by the FLSA and recklessly disregarded same;

    b. Specifically designated hours as "overtime" on pay stubs, again demonstrating it <u>knew</u> the nonpayment of overtime was prohibited by the FLSA, and recklessly disregarded same by paying him at a straight-time rate for those hours;

    c. Denied Everett overtime compensation during timeframes directly corresponding to when Defendant was experiencing large upticks in overtime hours, such as power outages, when more employees were required to work and causing Defendant's payroll to increase significantly;

    d. Even after complaining about the unpaid overtime, Defendant did not compensate Everett for his unpaid overtime; and

    e. Upon information and belief, Defendant denied the <u>majority</u> of its manual workers overtime on many occasions.

66. Everett's complaints to Defendant about his unpaid overtime were sufficiently clear and detailed for a reasonable employer to understand them, and thus constituted protected activity under the FLSA.

67. Defendant took adverse employment action against Everett by continuing to

not compensate him for his unpaid overtime, continued to deduct wages from his pay checks without prior notice to him, and thus effectively constructively discharged him from his employment with Defendant.

68. A causal connection exists between Everett's protected reporting of unpaid overtime and the adverse employment actions because Defendant continued to fail to compensate him for his unpaid overtime.

69.  Defendant's willful and reckless violations of the FLSA have caused Everett significant economic and emotional damages.

## CAUSE OF ACTION TWO:
## VIOLATION OF SOUTH CAROLINA WAGE ACT, 41-10-10 et. seq.

70. Everett re-states and re-alleges the allegations in Paragraphs 1 through 69 of his Complaint as if set forth fully herein.

71. S.C. Code Ann. § 41-10-30(A) requires in part that employers "shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the **deductions which will be made** from the wages, **including payments to insurance programs**…any changes in these terms must be made in writing at least seven calendar days before they  become effective." (Emphasis added.)

72. Notwithstanding the clear language of S.C. Code Ann. § 41-10-30(A), Defendant noticed Everett on the day his paycheck was issued on July 1, 2018, that it was deducting "8 hours" (the equivalent of $240 calculated at $30 per hour times eight). See Exhibit B.

73. Further, Defendant reduced Everett's pay rate from the $25 pay raise he

had received (up from $22 per hour) in 2015 to $15.50 per hour in 2016, without ever giving him the statutory seven-day notice.

74. Defendant likewise continuously deducted <u>insurance premiums</u> from Everett's paychecks that were supposed to be paid by Defendant without ever giving Everett the statutory seven-day notice.

75. S.C. Code Ann. § 41-10-40(C) prohibits deductions of wages unless it is "required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions as required by subsection (A) of Section 41-10-30."

76. However, Defendant continuously deducted significant sums from Everett's paychecks without ever giving him the statutory seven-day notice, when it was not permitted to do so by South Carolina state law or federal law.

77. S.C. Code Ann. § 41-10-50 mandates that "[w]hen an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular payday which may not exceed thirty days."

78. However, Defendant neither paid Everett his earned overtime nor the improperly deducted dollar amounts within the statutory period, and in fact to date has not remitted these amounts after Everett demanded payment of same.

79. Defendant did not have a good faith reason to withhold any of Everett's overtime or any other amount without notice to him, and there was no bona fide dispute between the parties that Everett was owed these sums.

80. That Defendant did not act in good faith or reasonably is evidenced by the fact that Everett complained to Defendant about the improper withholdings and uncompensated overtime on numerous occasions, yet Defendant neither investigated nor rectified the situation.

81. Instead, that Defendant's improper withholdings were <u>entirely arbitrary</u> is evidenced for several reasons, including but not limited to:

    f. It withheld premiums for several months in 2015 and then stopped withdrawing them in September 2015 through January 1, 2017;

    g. It withheld phone bill payments on some occasions and on other occasions did not;

    h. It paid Everett overtime on some occasions and on other occasions did not; and

    i. It reduced Everett's pay rate for a period of two weeks for no apparent reason.

82. Defendant's bad faith and unreasonable misconduct in violation of the Wage Act caused Everett significant economic and emotional damages.

**CAUSE OF ACTION THREE:**
**FAILURE TO TIMELY OR PROPERLY NOTICE RIGHTS UNDER**
**ERISA and COBRA**

83. Everett re-states and re-alleges the allegations in Paragraphs 1 through 82 of his Complaint as if set forth fully herein.

84. Upon information and belief Defendant employed at least 20 full-time people for more than half of its business days in the previous calendar year.

85. Upon information and belief, Defendant is subject to the requirements of the

Consolidated Ominous Budget Reconciliation Act of 1985 (herein, "COBRA") and the Employee Retirement Income Security Act (herein, "ERISA").

86. Upon information and belief, Defendant is the plan administrator for its employee group benefit plan.

87. The termination of Everett's employment (constructive discharge) with Defendant is a "qualifying event" for purposes of ERISA because it did not constitute gross misconduct.

88. After Everett ceased active work, his health benefits coverage through Defendant's health insurance plan was terminated.

89. Everett requested the SPD from Defendant via email on August 9, 2018.

90. Notwithstanding his request and its requirements under ERISA and COBRA, Defendant did not notify Everett or the other plan beneficiaries of their rights under COBRA within 44 days; in fact Defendant never notified Everett of his COBRA rights at any time.

91. Defendant's conduct prejudiced Everett because COBRA coverage was not made available to him, in that his children and wife could not visit the doctor.

92. Defendant's conduct was willful because it totally ignored Everett's request for the SPD.

93. Defendant's conduct in violation of ERISA and COBRA caused Everett significant economic and emotional damages.

## CAUSE OF ACTION FOUR:
## BREACH OF FIDUCIARY DUTY UNDER ERISA and COBRA

94. Everett re-states and re-alleges the allegations in Paragraphs 1 through 93 of his Complaint as if set forth fully herein.

95. As plan administrator, Defendant was in a fiduciary relationship with Everett.

96. Failure to give plan beneficiaries SPDs at the beginning of their employment constitutes a breach of Defendant's fiduciary duties.

97. Failure to notice and provide COBRA rights/benefits constitutes a breach of of Defendant's fiduciary duties.

98. Defendant's breach of its fiduciary duties caused Everett significant economic and emotional damages.

## PRAYER FOR RELIEF

WHEREFORE Everett prays for the following relief:

1. Awarding of statutory penalties to Everett and his beneficiaries pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for Everett and each of his beneficiaries for the failure to provide any notice of their rights under COBRA;

2. Judgment for three times Everett's actual damages, the exact amount proven at trial, for Defendant's violations of the Wage Act;

3. Judgment against Defendant for Everett's actual damages, the exact amount to be proven at trial, for Defendant's statutory violations of the FLSA's provisions regarding overtime compensation, liquidated as permitted under the FLSA;

4. Judgment against Defendant for compensatory and Everett's actual damages,

the exact amount to be proven at trial, for Defendant's FLSA retaliation, liquidated as permitted under the FLSA;

5. Judgment against Defendant for Everett's actual damages, the exact amount to be proven at trial, for its statutory and tortious violations of ERISA and COBRA;

6. Judgment against Defendant for Everett's reasonable attorney's fees and costs pursuant to the Wage Act, FLSA, and ERISA; and

7. For such other relief as the Court deems just and equitable.

Dated: 11/5/18

Casey Martens (Fed. Bar No. 12812)
MHC Law, LLC
1250 Folly Road
Charleston, SC 29412
Tel: (843) 225-8651
Casey@mhc-lawfirm.com

**ATTORNEY FOR PLAINTIFF**

28

## VERIFICATION

I, Casey Martens, declare as follows:

I am the attorney for Defendant, and have read the foregoing Complaint with Jury Demand and know the contents thereof. I am informed and believe that the matters stated therein are true and, on that ground, allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ⏤ day of Nov., 2018, at Charleston, South Carolina.

⏤⏤⏤⏤⏤⏤⏤⏤⏤⏤

Casey Martens

29